# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 17-0462V
(not to be published)

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * | | Special Master Corcoran |
| JANE ELISE DELZER, * | | |
| * | | |
| Petitioner, * | | Filed: January 18, 2019 |
| * | | |
| v. * | | |
| * | | Motion to Dismiss; SIRVA Injury; |
| SECRETARY OF HEALTH * | | Dismissal of Petition; Vaccine Act; |
| AND HUMAN SERVICES, * | | Six Month Severity Requirement |
| * | | |
| Respondent. * | | |
| * | | |
| * * * * * * * * * * * * * * * * * * * * | | |

*Joseph Michael Russell,* Von Briesen & Roper, S.C., Milwaukee, WI, for Petitioner.

*Justine E. Walters,* U.S. Dep't of Justice, Washington, DC, for Respondent.

### DECISION GRANTING RESPONDENT'S MOTION TO DISMISS[1]

On March 31, 2017, Jane Elise Delzer filed a petition seeking compensation under the National Vaccine Injury Compensation Program,[2] alleging that the influenza ("flu") vaccine she received on October 27, 2014, caused her to suffer from a left shoulder injury related to vaccine administration ("SIRVA"). *See* Petition ("Pet.") (ECF No. 1) at 1. The case was initially assigned to the Special Processing Unit of the Office of Special Masters ("SPU"), in the expectation that it could be resolved without extensive litigation. Order, dated April 3, 2017 (ECF No. 5).

---

[1] Although this Decision has been formally designated "not to be published," it will nevertheless be posted on the Court of Federal Claims's website in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). **This means the Decision will be available to anyone with access to the internet**. As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the Decision in its present form will be available. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) ("Vaccine Act" or "the Act"). Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

Petitioner's counsel filed the majority of her medical records by March 3, 2017. *See* ECF Nos. 9-11. An initial Joint Statement of Completion was filed on August 7, 2017 (ECF No. 17). The record reveals that Petitioner obtained additional records pertinent to the case in the latter half of 2017 (ECF Nos. 20, 24, 27), and thereafter filed an Amended Statement of Completion on January 26, 2018 (ECF No. 28). Accordingly, it was the Petitioner's understanding as of that date (approximately one year ago) that all evidence relevant to her claim had been obtained and filed.

Thereafter, on May 25, 2018, Respondent filed his Rule 4(c) Report, along with a Motion to Dismiss (ECF No. 31). In it, Respondent argued that Ms. Delzer's SIRVA claim did not merit compensation—in particular because of her inability to satisfy the Vaccine Act's six-month severity requirement (as the contemporaneous medical record lacked persuasive corroborating evidence of a persisting injury). *See* Rule 4(c) Report, filed on May 25, 2018 (ECF No. 30) at 6-9, and Motion to Dismiss, dated May 25, 2018 (ECF No. 31) (collectively, "Mot."); Section 11(c)(1)(D)(i). The matter was subsequently assigned out of SPU to me, and I requested that the parties file briefs in reaction to Respondent's motion. *See* Petitioner's Response to Motion, dated June 22, 2018 ("Opp. I"); Petitioner's Supplemental Brief, dated September 14, 2018 ("Opp. II"); Respondent's Response to Petitioner's Supplemental Brief, dated October 15, 2018 ("Reply").

Having had the opportunity to review the above as well as the records filed in this case, I hereby (for the reasons stated in more detail below) GRANT Respondent's Motion to Dismiss.

**Relevant Factual Background**

It is not disputed that Ms. Delzer received the flu vaccine on October 27, 2014 (Ex. 1 at 2; Ex. 8 at 23). The treatment record, coupled with Ms. Delzer's petition and supporting affidavits, suggests that the alleged onset of her left shoulder pain[3] began some time between that October date and the immediate weeks following. *See* Pet. at 1-2; Affidavit of Jane Delzer, dated Aug. 3, 2017, filed as Ex. 4 (ECF No. 20-1) at 2-3 (noting pain at the injection site at the time of administration, while also stating the pain developed "[o]ver the next few weeks"); Affidavit of Jane Delzer, dated Jan. 16, 2018, filed as Ex. 13 (ECF No. 27-1) at 3 (noting pain at injection site which spread to upper arm, then progressed over the next few weeks); Affidavit of Kenneth Finkel (Petitioner's husband), dated Aug. 4, 2017, filed as Ex. 5 (ECF No. 20-2) at 1 (pain began "[w]ithin weeks").

The medical records filed in support of Petitioner's claim establish that she presented to her primary care physician ("PCP") and various physical therapists for on-going treatment in the

---

[3] Pre-vaccination health records reveal that Ms. Delzer had pre-existing neck and shoulder problems dating back to at least 2008, and was routinely treated for conditions arising therefrom. *See, e.g.*, Ex. 6 at 1; Ex. 11 at 9; Ex. 9 at 20, 26, 31; Ex. 2 at 3; Ex. 7 at 1; Ex. 10 at 3, 22-32.

months immediately following vaccine administration, or from November 2014 through (arguably) February 2015. *See, e.g.*, Ex. 3 at 1-3, 4-6, 8-9, 10-11, 13; Ex. 10 at 35-39, 40-41; Ex. 10; Ex. 2 at 15-17. However, the remaining filed records (dating from June 2015 through September 2017) make no mention of any left shoulder complaints. *See, e.g.*, Ex. 2 at 20, 29, 34; Ex. 10 at 59, 60-61, 76, 81, 88, 96, 100). This omission is notable, given that Petitioner attended *multiple* physical therapy visits in the two years following February 2015, at which time she sought treatment for her long-standing neck issues - yet never also complained of on-going left shoulder pain (even though it would have been logical in that context to mention such pain if it was of concern). *See, e.g.*, Ex. 10 at 59 (August 15, 2016 physical therapy ("PT") entry concerning consultation for neck pain), 60-66 (August 22, 2016 & September 8, 2016 visits for neck pain, left-sided neck stiffness, and right knee pain), 76-81 (December 5, 2015 & December 13, 2016 visits for left-sided neck pain), 88-100 (August 10, 2017, August 18, 2017 & September 8, 2017 visits for left-sided cervical/neck pain).

**Parties' Respective Arguments**

As noted above, Respondent seeks dismissal based on his contention that the effects of Petitioner's alleged SIRVA injury had resolved within six months following administration. Mot. at 7. In support, Respondent's Rule 4(c) Report cited heavily to record evidence of various medical visits that occurred during the relevant time period and thereafter but which revealed no instances of left shoulder pain or injury complaints. *Id.* (citing Ex. 2 at 20-21, 29, 34; Ex. 10 at 59-61, 67, 76, 88, 100). Respondent otherwise argued that Petitioner was relying solely on her own unsubstantiated witness affidavits, which could not overcome the lack of evidence in the contemporaneous record. *Id.*

In opposing dismissal, Petitioner argued that the medical record (coupled with the affidavits filed in support) *do* demonstrate that Ms. Delzer suffered and immediate, adverse reaction to the flu vaccine, and that her injury continued into the summer of 2015. Opp. I at 5-6. In support, Petitioner cited specifically to a physical therapy visit in February 2015, which assessed her left shoulder pain as "*under control* now w/ functional activities," (thus implying that the injury was an underlying concern even if treatment of its symptoms alleviated the associated pain). Ex. 3 at 12 (emphasis added) (also noting "much less ache now in left shoulder"). Petitioner otherwise asserted that relevant fact witness affidavits further demonstrated that her left shoulder problems lasted longer than six months, although no records existed to substantiate the assertions contained in them. *See generally* Exs. 4, 5, 13. Petitioner also requested that I hold a hearing to properly assess the record and the credibility of the testimony offered in the submitted affidavits. Opp. I at 6.

After I reviewed the briefs filed in connection with Respondent's motion, I held a status conference with the parties in July 2018. At that time, I noted that Petitioner appeared to be over-

relying on her own subjective statements to corroborate that the severity requirement had been met rather than on objective proof. However, because it was possible that Petitioner's witness statements could still be independently corroborated with some kind of proof, I asked the parties to file supplemental briefs, and invited Petitioner to look for and file such corroborative evidence. *See* Non-PDF Order, dated July 23, 2018 ("Petitioner shall file a brief . . . offering additional evidence in support of her argument that her claim meets the six-month severity requirement") (docket entry).

Petitioner filed her supplemental brief as ordered in September 2018. She filed no additional evidence in support of her position (despite an affirmed effort to identify such evidence). Opp. II at 1. She did, however, cite an August 8, 2016, PT visit (the first visit following the possible close of the six-month window the summer before) which indicated treatment for "soreness especially left side of neck." *Id.* at 2 (citing Ex. 10 at 46). That same document, however, makes no reference to the flu vaccine or an existing left shoulder injury, although it does include in the "past history" section a reference to a fall on ice seven years prior. *Id.* Petitioner asked for the opportunity to take a deposition of Petitioner's treating physical therapist, to ascertain if the treater had assessed her with any left shoulder pain despite the record's silence on that topic. *Id.* She did not offer any statement from that treater, or indicate that she had made any initial efforts to secure the treater's participation (even though by this time she had been on notice of the pending motion – and the concomitant need to locate supportive evidence for the severity issue – for four months).

Respondent's supplemental brief reiterated his argument that none of Petitioner's PT records from beyond six months after vaccination referenced any left shoulder complaints. Reply at 2. Respondent also addressed Petitioner's discovery request, noting that any additional statements from treaters elaborating on the contemporaneous record would fall within the realm of medical expert testimony, but that a physical therapist might not be sufficiently credentialed to opine upon such matters. *Id.* at 3.

**Analysis**

To receive compensation under the Vaccine Program, a petitioner must prove either (1) that she suffered a "Table Injury" – i.e., an injury falling within the Vaccine Injury Table – corresponding to one of her vaccinations, or (2) that she suffered an injury that was actually caused by a vaccine. *See* Sections 13(a)(1)(A) and 11(c)(1). Under either method, however, a petitioner must also show that the injured person has "suffered the residual effects or complications of [her] illness, disability, injury, or condition for more than six months after the administration of the vaccine." 42 U.S.C. § 300aa–11(c)(1)(D)(i). Cases may appropriately be dismissed for failure to substantiate the severity requirement. *See, e.g.*, *Hinnefeld v. Sec'y of Health & Human Servs.*, No. 11-328V, 2012 WL 1608839, at *4-5 (Fed. Cl. Spec. Mstr. Mar. 30, 2012) (dismissing case where

medical history revealed that petitioner's Guillain–Barré syndrome resolved less than two months after onset).

It is Petitioner's burden to prove her case (including the six-month requirement) by a preponderance of the evidence. *See* Section 300aa–13(a)(1)(A). To satisfy the six-month requirement, "[a] potential petitioner must do something more than merely submit a petition and an affidavit parroting the words of the statute." *Faup v. Sec'y of Health & Human Servs.,* No. 12-87V, 2015 WL 443802, at *3 (Fed. Cl. Spec. Mstr. Jan. 13, 2015) (citing *Black v. Sec'y of Health & Human Servs.,* 33 Fed. Cl. 546, 550 (1995), *aff'd*, 93 F.3d (Fed. Cir. 1996)). A petitioner cannot establish the length or ongoing nature of an injury merely through his or her own statements, but rather is required to "submit supporting documentation which reasonably demonstrates that the alleged injury or its sequelae lasted more than six months . . . ." *Black*, 33 Fed. Cl. at 550 (internal quotations omitted); *see also Lett v. Sec'y of Health & Human Servs.*, 39 Fed. Cl. 259, 260-61 (1997) ("[s]ection 300–aa13(a)(1) provides that a special master may not award compensation 'based on the claims of petitioner alone, unsubstantiated by medical records or by medical opinion'").

Based upon the record discussed above, if I assume that Petitioner's pain (at best) began within four weeks following vaccine administration, or by November 27, 2014, she must logically demonstrate that her shoulder pain continued through May 24, 2015 (six months later). Respondent's motion to dismiss is based solely on the filed medical records, which he contends reveal no evidence of left shoulder complaints lasting that long after vaccination.

Those records are largely unsupportive of Petitioner's argument. There is strong record evidence supporting the conclusion that Petitioner's left shoulder pain had actually resolved by mid-February 2015 – long before the expiration of the six-month period. *See, e.g.*, Ex. 10 at 44 (final therapy note from February 12, 2015 indicating "Pt. has achieved cerv. ROM 80-100%, left shoulder pain under control now w/ functional activities"). There is then a subsequent gap in the medical record, as Petitioner did not seek physical therapy treatment again until *a year later* - with the next record detailing *any* physical therapy treatment dated August 8, 2016 (and even that record at best references *neck* pain with onset only a few months before). *See* Ex. 10 at 46. The remainder of her physical therapy and primary care visits beyond that date fail to mention any additional left shoulder complaints that could arguably be associated with Petitioner's pain closer-in-time to her vaccination. *See, e.g.*, Ex. 10 at 46-105, Ex. 2 at 20, 29, 34.

Petitioner's witness affidavits (from both herself and her husband) attempt to offer some corroboration of her claim. *See* Ex. 13 at 3-4 (stating severe pain in left shoulder lasted six months post-vaccination and inhibited Petitioner's ability to lift heavy objects, complete gardening tasks, sleep on left side, and bike), 5 (stating Petitioner completed at-home physical therapy exercises into the summer 2015); Ex. 4 at 5-6 (stating "most of the aching went away" but Petitioner still

5

feels as if she has reduced strength in left arm presently); Ex. 5 at 2 (asserting Petitioner became pain-free in the "[s]ummer of 2015"). But such evidence is inherently less probative than the contemporaneous record, and therefore by itself is insufficient to create a triable issue of fact. *See, e.g.*, *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993); *Lamell v. Sec'y of Dep't of Health & Human Servs.*, No. 90–3607V, 1991 WL 161079, at *3 (Fed. Cl. Spec. Mstr. Aug. 5, 1991) (summary judgment was appropriate in a case where the "only evidence of an adverse reaction within the statutory time frame is the affidavits of the parents describing symptoms, which, even considered in light most favorable to petitioners, are inadequate to establish a Table injury."). Indeed, this kind of testimonial evidence has been deemed insufficient to establish that the six-month requirement has been met. *See, e.g.*, *Uetz v. Sec'y of Health & Human Servs.*, No. 14-29V, 2014 WL 7139803, at * 3-4 (Fed. Cl. Spec. Mstr. Nov. 21, 2014) (finding affidavits contrary to the contemporaneous medical record did not support a finding that the six-month requirement had been satisfied); *see also Volger v. Sec'y of Health & Human Servs.*, No. 11-424V, 2014 WL 1991851, at *4, 8-10 (Fed. Cl. Spec. Mstr. Apr. 25, 2014) (recognizing that filed affidavits can "bulwark" a claim that an injury meets the six-month requirement, but not in the face of a medical record to the contrary).

I permitted Petitioner the opportunity to further substantiate her prior witness statements with evidence not yet filed – but by her own admission she could not identify any such evidence. Opp. II at 1. At best, she argued that discovery from a treater (specifically, the physical therapist she saw in August 2016) might establish that Petitioner's shoulder injury problems were also considered at that time, even if the record makes no direct mention of this occurring.[4] The Vaccine Rules permit me to allow discovery in appropriate circumstances (*see* Vaccine Rule 7; *see, e.g.*, *Mostovoy v. Sec'y of Health & Human Servs.*, No. 02-010V, 2016 WL 7655185, at *2 (Fed. Cl. Spec. Mstr. Feb. 4, 2016)), but I do not find those circumstances herein. Petitioner has not demonstrated any likelihood that such discovery (which is not routine in Program cases) would resolve this issue in her favor, as opposed to simply increasing delay. A related concern is the dilatory nature of this discovery proposal. Petitioner had four months from the time Respondent first raised the severity requirement as an obstacle to her claim to look for this kind of evidence, but took no action (for example, to seek the therapist's recollection by informal means, or obtain the individual's written statement). The time to marshal such evidence has passed.[5]

---

[4] The August 2016 record indicates that Petitioner specifically reported left-side neck tightness and soreness, with onset in the late spring or early summer of 2016. Ex. 10 at 46. As noted earlier, her health history in that record also included a reference to having fallen in 2011, but made no reference to any arm pain associated with a vaccination. *See id.* Petitioner's overall assessment during the visit included "exacerbation of left cerv. pain" with an objective to "[b]il. UE AROM/strength WNL." *Id.* The record does not further explain or define this objective, and I see no reason to hear further from the treating physical therapist given the overall lack of discussion of any vaccine-related arm pain during the visit.

[5] By contrast, in a case where a petitioner had reached out to the individual in question but had been rebuffed, and where it appeared likely the individual's testimony could resolve the disputed issue in petitioner's favor, a request for such discovery would be more appropriate.

**CONCLUSION**

Under the Vaccine Act, a petitioner may not receive a Vaccine Program award based solely on her own allegations. Rather, the petition must be supported by either medical records or by the opinion of a competent medical expert. Section 13(a)(1). In this case, however, there is insufficient evidence in the record for Petitioner to meet her burden of proof, because Petitioner has not demonstrated that her case fulfills the six-month requirement as required by the Vaccine Act. Section 11(c)(1)(D)(i).

Accordingly, Respondent's Motion to Dismiss is **GRANTED**. In the absence of a motion for review, the Clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**

/s/ Brian H. Corcoran
Brian H. Corcoran
Special Master